NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**HANNAH HARDING,**
*Petitioner,*

**v.**

**UNITED STATES NAVAL ACADEMY,**
*Respondent.*

---

2013-3092

---

Petition for review of an arbitrator's decision in No. 120516-55631-7 by Sean J. Rogers.

---

Decided: June 26, 2014

---

THOMAS J. GAGLIARDO, AFGE Local 1923 Legal Representation Fund, of Baltimore, Maryland, argued for petitioner. With him on the brief were SHANNON C. LEARY and RENN C. FOWLER, The Law Offices of Gary M. Gilbert & Associates, of Silver Spring, Maryland.

DOMENIQUE KIRCHNER, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were STUART F. DELERY, Assistant Attorney General, BRYANT G. SNEE,

Acting Director, and KENNETH M. DINTZER, Acting Deputy
Director.

————————————

Before TARANTO, BRYSON, and HUGHES, *Circuit Judges.*

BRYSON, *Circuit Judge.*

Hannah Harding petitions for review of an arbitra-
tor's decision upholding her removal as an employee of
the United States Naval Academy ("USNA"). She raises a
number of claims of legal error, all of which we find
meritless. As to the choice of removal as a penalty, our
limited authority to review penalty determinations in
federal personnel cases compels us to affirm the arbitra-
tor's decision.

I

Ms. Harding served for 24 years as a cook in the Mid-
shipmen Food Services Division at the USNA. On Janu-
ary 12, 2012, while off duty, she drove her personal
vehicle onto the Naval Support Activity ("NSA") facility in
Annapolis, Maryland, near the Naval Academy. She was
on the facility grounds in order to obtain a key for a
banquet room that she was planning to use that evening.
When Ms. Harding picked up the key, an NSA employee
noticed that she seemed to be acting strangely and noti-
fied the police.

Based on that tip, a police officer assigned to the NSA
stopped Ms. Harding's vehicle and determined that she
was intoxicated. The officer asked her if she had taken
any drugs, to which she replied that she had "snorted
some coke" the night before. She was later charged with,
and pleaded guilty to, the offense of driving or attempting
to drive while impaired by drugs or alcohol.

The following month, a USNA supervisor sent Ms.
Harding a notice of proposed removal. The notice advised
her that the USNA proposed to remove her from her

position "for being under the influence of illegal drugs and alcohol while off-duty on Government property." The notice explained that the reason for the proposed removal was that she was under the influence of drugs and alcohol while on NSA grounds and had admitted the illegal use of cocaine to the arresting officer.

After Ms. Harding responded to the notice, the USNA's Commandant of Midshipmen issued a notice of decision advising her that she would be removed from her position as of March 16, 2012. The Commandant found the specific charges in the notice of proposed removal to be supported by the evidence and determined that her actions had "adversely affected the efficiency of the service, endangered the residents of the Naval Support Activity, and violated the Department of the Navy's Drug-Free Workplace policy." He added that he had considered various factors bearing on the appropriate penalty, including the seriousness of the offense, the effect of the offense on her supervisors' confidence in her ability to perform her assigned duties, and the consistency of the penalty with those imposed on other employees for the same or similar offenses. Although he considered her 24 years of service, her satisfactory record of performance, and the absence of any prior disciplinary record to be "significant mitigating factors," he concluded that those factors did not outweigh the nature and seriousness of the offense. Ms. Harding sought review of the Commandant's decision and opted in favor of review by an arbitrator.

The arbitrator upheld the removal. Based on the largely undisputed facts and Ms. Harding's admission that "she has never denied that she engaged in the conduct [of] which she has been accused," the arbitrator found that Ms. Harding was under the influence of illegal drugs and alcohol while off duty on the NSA grounds. Addressing Ms. Harding's arguments, the arbitrator ruled (1) that the USNA had established a nexus between her off-duty misconduct and her job duties in light of her

"extremely serious violation of USNA work rules," particularly in light of the fact that her off-duty misconduct occurred on the NSA facility; (2) that removal was within the prescribed table of penalties for her offense and was "within the tolerable bounds of reasonableness"; (3) that the Commandant's decision and his testimony about the decisionmaking process showed "a careful and reasoned consideration of the applicable *Douglas* factors," *see Douglas v. Veterans Admin.*, 5 M.S.P.R. 280 (1981), regarding the appropriateness of the penalty; and (4) that Ms. Harding had failed to establish that the penalty of removal reflected disparate treatment of Ms. Harding when compared to the penalties imposed on other, similarly situated employees. Ms. Harding then petitioned for review by this court.

## II

On appeal, Ms. Harding relies heavily on the argument that she was denied due process because she was not adequately notified of various aspects of the conduct, evidence, and aggravating penalty factors that the deciding official considered in reaching his removal decision. She concedes that she did not raise any of her due process concerns before the arbitrator, but she argues that because her claims are constitutional in nature, she is entitled to raise those claims for the first time on appeal.

A reviewing court has discretion to consider issues not raised below under certain circumstances. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976); *Forshey v. Principi*, 284 F.3d 1335, 1353-59 (Fed. Cir. 2002) (en banc). However, there is no strict rule requiring the court to consider any constitutional issue raised on appeal even though it was not raised below. *See Singleton v. Shinseki*, 659 F.3d 1332, 1334 n.2 (Fed. Cir. 2011); *Beard v. Gen. Servs. Admin.*, 801 F.2d 1318, 1321 (Fed. Cir. 1986); *Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1539 (Fed. Cir. 1984).

Ms. Harding has not offered any explanation for her failure to raise her due process claims before the arbitrator, and for that reason, we see no justification for excusing her failure to preserve those issues below. Nor has she shown that the asserted errors that she seeks to raise in this court for the first time on appeal rendered the disciplinary proceedings in this case fundamentally unfair. We therefore conclude that this is not an appropriate case in which to exercise our discretion to excuse the failure to raise those claims before the arbitrator.

Even apart from the procedural default, we would reject Ms. Harding's due process claims on the merits. Her first contention is that she was not given notice of the charges that formed the basis for the deciding official's decision to remove her. She argues that the notice of proposed removal referred to her "being under the influence of drugs and alcohol while off-duty on government property," while the notice of decision "added the new and more serious charge of illegal drug use." Accordingly, she submits, the agency impermissibly relied on uncharged conduct in deciding to remove her.

That argument is unpersuasive. The notice of proposed removal included a brief narrative account of the charge against her, explaining that she had been found to be under the influence of drugs and alcohol, and had admitted illegal use of cocaine to the arresting officer. The notice further explained that the use of drugs and alcohol negatively affected the agency's ability to accomplish its mission, that "illegal drug use cannot be tolerated" in her position, that her "off-duty misconduct involving illegal drugs and alcohol was discovered onboard a Navy facility, that [she was] operating a motor vehicle, and that [her] illegal drug use may find its way into the work place . . . ." The notice of proposed removal thus could not reasonably have misled Ms. Harding into believing that illegal drug use was not part of the reason underlying the proposal to remove her.

Ms. Harding's second due process claim is that she was not given notice that the USNA's deciding official would rely on the police report of her January 12, 2012, arrest in making his decision to remove her. The notice of proposed removal, however, stated that Ms. Harding and her representative could "review the material relied upon to support proposing your removal," including "the official case file." Ms. Harding does not contend that the police report was not in the case file or that she was denied the opportunity to review the police report. Under these circumstances, providing access to the materials the agency relied upon to support the removal action was sufficient to satisfy any possible due process concerns. *See Darnell v. Dep't of Transp.*, 807 F.2d 943, 945 (Fed. Cir. 1986); *Novotny v. Dep't of Transp.*, 735 F.2d 521, 523 (Fed. Cir. 1984). Moreover, as Ms. Harding has never disputed any of the underlying facts relating to the charges against her, it is unclear how earlier access to the police report would have been of any assistance to her.

Ms. Harding's third due process claim is that her removal was improperly based on several aggravating penalty factors of which she was not given notice. The factors about which she complains are: (1) that she acted with intent; (2) that her removal was consistent with discipline in other similar cases; and (3) that she had operated her car while in an impaired state, thus endangering residents of the NSA.

As to intent, there has never been any dispute that Ms. Harding acted intentionally in using cocaine and in driving her vehicle onto the NSA grounds while in an impaired state. The deciding official's reliance on that factor could not reasonably have come as a surprise to Ms. Harding, given that there was essentially no dispute over the underlying facts that led to her removal. Indeed, in her response to the notice of proposed removal, she effectively admitted that she had driven onto the NSA facility

intentionally, i.e., with the purpose of retrieving a key for the banquet room she intended to use that night.

As to the deciding official's reference to the discipline imposed in similar cases, the major focus of that portion of the notice of decision was on the prescribed range of penalties for off-duty drug use, which included removal, and Executive Order No. 12564, which prohibits drug use by federal employees, whether on or off duty. The deciding official explained that the reference to penalties "imposed upon other employees with similar misconduct" related to a case decided by a different deciding official several years earlier. The deciding official testified that he typically inquired about other similar cases because, "from a consistency standpoint in terms of process it's good to reference." But he added that the information about the one similar case that he learned of was not material to his decision. Moreover, the fact of consistency with other decisions was not used as an aggravating factor, and thus due process would not require that the employee be given advance notice of the deciding official's intent to consider the penalties imposed on others.

Finally, Ms. Harding argues that she was improperly denied notice that the deciding official would rely on the danger that Ms. Harding's conduct presented to persons living in the part of the NSA facility where she had been driving, which was a residential area. The act of driving under the influence of drugs or alcohol, however, is inherently dangerous. The deciding official was merely pointing out that Ms. Harding's conduct presented a danger to persons in the NSA, a conclusion that flowed naturally from the fact of impaired driving in a residential area. She was not deprived of due process by not being advised

in advance that the deciding official might draw that inference from the nature of the charged conduct.[1]

## III

Ms. Harding next argues that the arbitrator committed legal error by failing to require the USNA to prove certain penalty-related facts by a preponderance of the evidence. That claim is insubstantial.

First, although Ms. Harding complains that the agency failed to prove that she "was an habitual drug user" there was no reason for the agency to attempt to prove habitual drug use, because habitual drug use was not part of the agency's reason for removing her. "Drug

---

[1]   Ms. Harding relies on this court's decisions in *Ward v. U.S. Postal Serv.*, 634 F.3d 1274 (Fed. Cir. 2011), and *Stone v. FDIC*, 179 F.3d 1368 (Fed. Cir. 1999), to support her claim that she was denied due process by not being notified of the penalty-related factors listed above. Those cases are inapposite, as they both involved ex parte contacts with the deciding official in which information was conveyed to the decisionmaker without the employee's knowledge. In *Ward*, the ex parte communication conveyed information about several past instances of misconduct by the employee, which the deciding official took into account in deciding that removal was warranted. 634 F.3d at 1278. The past misconduct in *Ward*, unlike the factors raised by Ms. Harding, was clearly an aggravating factor as to which the employee had no notice. In *Stone*, the ex parte communication included the recommendation of another agency official that the employee be removed. 179 F.3d at 1372. The court remanded in *Stone* to determine whether the ex parte communication introduced new and material information to the deciding official. *Id.* at 1377. There is no issue of ex parte communication with the deciding official in this case.

use" was one of the reasons for her removal, not "habitual drug use."

Second, Ms. Harding argues that the agency did not prove that anyone was endangered by her impaired driving or that "she was any kind of a risk." As noted above, however, impaired driving is inherently dangerous conduct; it was not necessary to prove that Ms. Harding's conduct was dangerous, and the USNA never claimed that she directly endangered any particular individual.

Finally, Ms. Harding argues that the agency did not prove that her supervisors had lost confidence in her. She relies on testimony from two of her immediate supervisors who stated that she was a good worker and that they would be happy to have her return to her job. Two higher-level supervisors, however, took a different view. One testified that he agreed with the decision to remove Ms. Harding, explaining that he would be nervous about the risks associated with having a food service employee under the influence of drugs. The other supervisor was the proposing official, who stated in the notice of proposed removal that he was "unwilling to put at risk the health and safety of other Naval Academy employees, midshipmen, and the families of those who live aboard NSA and the Naval Academy by allowing [Ms. Harding's] continued presence on the Naval Academy complex." While Ms. Harding characterizes those views as exaggerated and the product of command influence, the evidence was plainly sufficient to support a conclusion that her supervisors at the USNA had lost confidence in Ms. Harding.

## IV

Ms. Harding next contends that the penalty of removal for "a single, isolated, off-duty incident" is "unconscionably beyond the bounds of reasonableness." We regard the penalty as quite harsh in light of Ms. Harding's 24 years of service with the USNA and the absence of any prior disciplinary actions in her record. In view of the

extremely limited scope of our review of penalty determinations, however, we uphold the penalty assessed in this case.

The task of selecting a penalty rests primarily with the employing agency. As this court has explained, it is "a well-established rule of civil service law that the penalty for employee misconduct is left to the sound discretion of the agency." *Lachance v. Devall*, 178 F.3d 1246, 1251 (Fed. Cir. 1999). The first level of review of the agency's decision is by the Merit Systems Protection Board or an arbitrator. That review is limited to determining whether the choice of penalty was an abuse of discretion. *McGowan v. Dep't of the Air Force*, 28 M.S.P.R. 314, 317 (1985). Our review, which is the second-level review of the penalty decision, is even more limited.

The various formulations of our reviewing authority over agency penalty determinations bristle with words of limitation. We have stated that we will not disturb an agency's choice of penalty within statutory or regulatory limits "unless the severity of the agency's action appears totally unwarranted in light of all the factors," *Mings v. Dep't of Justice*, 813 F.2d 384, 390 (Fed. Cir. 1987), unless it is "grossly disproportionate to the offense," *Miguel v. Dep't of the* Army, 727 F.2d 1081, 1083 (Fed. Cir. 1984), unless it is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion," *Gonzales v. Def. Logistics Agency*, 772 F.2d 887, 889 (Fed. Cir. 1985), or unless it is "outrageously disproportionate" to the offense, *Bryant v. Nat'l Sci. Found.*, 105 F.3d 1414, 1418 (Fed. Cir. 1997). "Whether [this court] would have chosen a different penalty is irrelevant." *Hunt v. Dep't of Health & Human Servs.*, 758 F.2d 608, 611 (Fed. Cir. 1985).

In this case, the penalty of removal was among the permissible penalties set forth in the USNA's table of penalties for unlawful use of illegal drugs on or off duty.

Moreover, the conduct in question involved not only the use of drugs, but also driving under the influence of alcohol or drugs in a residential Naval facility, conduct that the deciding official considered to have potentially endangered residents in the area. Although the arbitrator concluded that the penalty of removal was "at the outer extreme of the range of penalties," he concluded that it was "within the tolerable bounds of reasonableness." Applying the restrictive standard applicable to our review of the arbitrator's decision, we hold that the penalty is not outrageously disproportionate to the offense or totally unwarranted, and we therefore uphold the penalty selected by the deciding official.

V

Ms. Harding next contends that the arbitrator improperly failed to consider the less severe disciplinary measures imposed on similarly situated employees, and that Ms. Harding's removal should be overturned for that reason. The arbitrator considered the other disciplinary cases that Ms. Harding presented for his consideration but concluded that none of them were comparable; he therefore rejected her argument that she had been subjected to disparate treatment.

In her brief, Ms. Harding raises the same cases that she presented to the arbitrator. After reviewing them, we agree with the arbitrator that they are not comparable to this case and therefore do not support her claim of disparate treatment. Several of the cases involved employees who were given lesser penalties than removal after being found to be under the influence of alcohol or drinking while on duty. Those cases did not involve the use of drugs, nor did they involve driving while under the influence of drugs or alcohol, as in Ms. Harding's case. In another case an employee who was arrested but not charged in 2002 in connection with a shooting incident, revealed that he had used drugs in the past, but was

given a last chance agreement in lieu of removal. The arbitrator found that case to be factually different from Ms. Harding's case and "attenuated by time." Finally, in two 2009 cases in which employees were charged with possession of cocaine, both employees were removed, although one was allowed to resign in lieu of removal, a disposition that is effectively the same as removal. Those cases therefore do not aid Ms. Harding. After reviewing the allegedly comparable cases, we agree with the arbitrator that they do not support Ms. Harding's claim of disparate treatment.

## VI

Finally, Ms. Harding argues that the arbitrator erred by concluding that the USNA established a nexus between the off-duty conduct charged against Ms. Harding and the duties of her position. We conclude that substantial evidence supports the arbitrator's conclusion that the agency proved the requisite nexus between Ms. Harding's conduct and her duties to justify disciplinary action.

The USNA work rules and Executive Order No. 12564 make clear that even off-duty drug use is prohibited conduct for employees. The arbitrator found that the proof of nexus was clear in light of those rules. He further found that the evidence of nexus was buttressed by the fact that Ms. Harding's off-duty misconduct of driving under the influence of drugs or alcohol occurred on the NSA grounds, which are Navy property.

In Executive Order No. 12564, the President made an express finding directed to the nexus between illegal drug use and federal employment, concluding that "[t]he use of illegal drugs, on or off duty, by Federal employees impairs the efficiency of Federal departments and agencies." 3 C.F.R. 224, 225 (1987). Case law from this court likewise supports the arbitrator's conclusion that there is a sufficient nexus between illegal drug use, even off duty, and federal employment. *See Rice v. Dep't of the Treasury*, 998

F.2d 997, 999 (Fed. Cir. 1993) ("The law is well settled that an employee can be removed for off-duty possession and use of . . . illegal drugs."); *Sanders v. U.S. Postal Serv.*, 801 F.2d 1328, 1332 (Fed. Cir. 1986) (citing cases). Ms. Harding argues that the principle of those cases does not apply to circumstances such as hers, in which only a single use of drugs was charged. In fact, however, this court has applied the principle set forth in those cases to sustain removal actions in other cases involving charges of only a single off-duty use of illegal drugs. *See Stump v. Dep't of Transp.*, 761 F.2d 680 (Fed. Cir. 1985); *Peterson v. Dep't of the Navy*, 268 F. App'x 961 (Fed. Cir. 2008). In light of those authorities and the evidence relating to Ms. Harding's impaired driving on Navy property, we sustain the arbitrator's conclusion that the USNA proved a nexus between Ms. Harding's misconduct and her job responsibilities. Accordingly, we uphold the arbitrator's decision sustaining Ms. Harding's removal.

**AFFIRMED**