UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

SCOTT P. STANFORD,
                   Appellant,

         v.

DEPARTMENT OF THE NAVY,
                   Agency.

DOCKET NUMBER
SF-0752-15-0444-I-1

DATE: September 15, 2016

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Mary Jo Henderson, Conyers, Georgia, for the appellant.

Major Corey Pullig and Jennifer Gazzo, Camp Pendleton, California, for
    the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which
sustained his removal. Generally, we grant petitions such as this one only when:
the initial decision contains erroneous findings of material fact; the initial
decision is based on an erroneous interpretation of statute or regulation or the

---

[1] A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law. Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions. In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to find that the penalty of removal would be reasonable even if the charge of insubordinate defiance of authority by failure to follow policies/regulations were not sustained, we AFFIRM the initial decision.

## BACKGROUND

¶2 The appellant was a GS‑12 Engineering Technician with the agency's Water Resources Division at Camp Pendleton, California. Initial Appeal File (IAF), Tab 6 at 14, 20. In addition, for approximately 5 years prior to his removal, among other duties, the appellant served as the Water Resources Division's Recycled Water Manager and was considered a subject matter expert in recycled water, which is filtered and disinfected waste water that is treated to a high level to meet specified criteria. IAF, Tab 6 at 29, 131, Tab 35, Hearing Compact Disc (HCD) (testimony of J.S., the Director of Camp Pendleton's Office of Water Resources, and Facilities Maintenance Officer Lieutenant Colonel J.L.).

¶3 On December 11, 2014, the agency proposed the appellant's removal based on two charges: (1) falsification of time and attendance records; and (2) insubordinate defiance of authority by failure to follow policies/regulations. IAF, Tab 6 at 34‑38. After the appellant orally responded to the notice of proposed removal, *id.* at 24‑28, on February 27, 2015, the deciding official

sustained the charges and notified the appellant that he would be removed from Federal service, effective that same day, *id*. at 20‑21. However, the agency also presented the appellant with a last chance agreement, which would have held his removal in abeyance, provided that, among other things, he admitted to the charged misconduct. *Id*. at 15‑19; HCD (testimony of the deciding official, Captain W.W.). The appellant ultimately decided not to sign the last chance agreement and was removed from Federal service, effective March 18, 2015. IAF, Tab 6 at 14; HCD (testimony of the appellant and Captain W.W.).

¶4      Thereafter, the appellant filed a timely Board appeal challenging his removal and raised affirmative defenses of harmful procedural error, whistleblower reprisal, and prohibited personnel practices in violation of 5 U.S.C. § 2302(b)(6). IAF, Tab 1 at 4, 6, Tab 15 at 2‑6, Tab 17 at 2‑3. After holding the requested hearing, the administrative judge issued an initial decision finding that the agency proved both of the charges. IAF, Tab 37, Initial Decision (ID) at 4-16; IAF, Tab 1 at 2. She found that the appellant failed to prove any of his affirmative defenses.[2] ID at 16‑22. Finally, she found that the agency proved a nexus between the charges and the efficiency of the service, ID at 22‑23, and that the penalty of removal was reasonable, ID at 23‑24.

¶5      The appellant has filed a petition for review of the initial decision, in which he challenges the administrative judge's findings regarding the charges, nexus, and penalty. Petition for Review (PFR) File, Tab 1 at 3‑21, 24‑27. He also contests the administrative judge's finding that he failed to prove his affirmative defense of harmful procedural error, and argues for the first time on review that

---

[2] On review, the appellant does not challenge the administrative judge's findings that he failed to prove his affirmative defenses of whistleblower reprisal and prohibited personnel practices in violation of 5 U.S.C. § 2302(b)(6), and we discern no basis to disturb these well‑reasoned findings. Petition for Review File, Tab 1; ID at 16‑19, 21-22.

the agency violated his due process rights. *Id.* at 21‑23. The agency has not responded to the petition for review.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative judge correctly found that the agency proved the charge of falsification of time and attendance records.</u>

¶6 In the charge of falsification of time and attendance records, the agency alleged that, on four occasions between March and May 2014, the appellant intentionally made false claims for hazardous duty pay on his timecards, resulting in his receiving approximately $1,600 in hazardous duty pay to which he was not entitled. IAF, Tab 6 at 34-35. The following facts are undisputed. The appellant made the claims for hazardous duty pay at issue based on his exposure to recycled water. *Id.*; HCD (testimony of the appellant, Lieutenant Colonel J.L., and the proposing official, Deputy Assistant Chief of Staff and Facilities Manager S.W.). On three of the timecards at issue, the appellant used a pay code indicating that he was entitled to hazardous duty pay based on exposure to poison and, on the fourth timecard, he used a pay code indicating that he was entitled to hazardous duty pay based on exposure to hazardous microorganisms. IAF, Tab 6 at 39, 42, 64‑65; HCD (testimony of the appellant, Director J.S., and Lieutenant Colonel J.L.).

¶7 To establish a charge of falsification, the agency must prove by preponderant evidence that the appellant knowingly supplied incorrect information and that he did so with the intention of defrauding the agency. *O'Lague v. Department of Veterans Affairs*, 123 M.S.P.R. 340, ¶ 6 (2016); *Boo v. Department of Homeland Security*, 122 M.S.P.R. 100, ¶ 10 (2014). For the reasons discussed below, we agree with the administrative judge that the agency proved the charge of falsification of time and attendance records. ID at 4‑12.

> *The administrative judge correctly found that the appellant knowingly supplied incorrect information on his timecards.*

¶8     The administrative judge correctly found that the appellant supplied incorrect information on his time cards when he claimed that he was entitled to hazardous duty pay.  ID at 9‑10.  J.S., the appellant's second-line supervisor and a licensed professional water resources engineer, testified that recycled water does not contain poison or hazardous microorganisms and that bodily contact with recycled water is not harmful.  ID at 6; HCD (testimony of Director J.S.).  The agency uses recycled water in the irrigation system at Camp Pendleton's hospital, and to water its golf course, pastures where horses graze, and fields where children play soccer and Marines perform physical training exercises.  ID at 3, 5-6; HCD (testimony of the appellant, Director J.S., Lieutenant Colonel J.L., and Deputy Assistant Chief S.W.).  The appellant has not identified any poison or hazardous microorganisms in recycled water, either below or on review.  HCD (testimony of the appellant); PFR File, Tab 1.  Therefore, we discern no reason to disturb the administrative judge's finding, which is supported by the weight of the record evidence.[3]  *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding no reason to disturb an administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

¶9     The administrative judge further found that the appellant knowingly supplied the incorrect information.  ID at 9‑10.  After analyzing the evidence and conducting a credibility analysis under the appropriate factors set forth in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), including the

---

[3] We have considered the appellant's generalized allegations on review that recycled water is potentially dangerous, and his claim that his blue jeans once became discolored after he was sprayed with recycled water, and find that they do not provide a basis for disturbing the initial decision.  PFR File, Tab 1 at 5, 12‑13; HCD (testimony of the appellant).

appellant's demeanor, she found that his claim that he believed that recycled water contained poison or hazardous microorganisms was not credible. ID at 9-10. Among other things, she found that the appellant's claim was inconsistent with his apparent lack of concern for the Marines, children, and other individuals at Camp Pendleton who came into contact with recycled water, and his own advocacy for the expanded use of recycled water at Camp Pendleton. ID at 9.

¶10 On review, the appellant challenges the administrative judge's credibility determination, arguing that he did not advocate for the expanded use of recycled water at Camp Pendleton, but instead only advocated that additional staff be hired to support a potential expansion of the recycled water program directed by others. PFR File, Tab 1 at 5‑8. As an initial matter, his argument is a distinction without a difference. If the appellant believed that recycled water contained poison or hazardous microorganisms, it is inherently improbable that the primary focus of his concern regarding Camp Pendleton's expanded use of recycled water would be an upgrade of his own position and hiring additional staff (as indicated by his evidence on review) rather than the safety of the public. *See id.* at 6-8; IAF, Tab 16 at 12‑13, Tab 22 at 26.

¶11 Moreover, J.S., the appellant's second‑level supervisor, testified that the appellant was seeking to expand the recycled water program "as much as possible," and, specifically, advocating for Camp Pendleton to use recycled water in toilets in barracks where enlisted Marines resided. HCD (testimony of Director J.S.). The administrative judge found J.S.'s testimony to be credible, and her credibility determination was based in part on an assessment of J.S.'s demeanor. ID at 6, 9; *see Little v. Department of Transportation*, 112 M.S.P.R. 224, ¶ 4 (2009) (finding that, when an administrative judge has heard live testimony, her credibility determinations must be deemed to be at least implicitly based upon the demeanor of the witnesses). The appellant's argument on review

that his advocacy was limited to staffing concerns does not provide a sufficiently sound reason to disturb the administrative judge's finding.  *See Haebe v. Department of Justice*, [288 F.3d 1288](), 1301 (Fed. Cir. 2002) (finding that, when an administrative judge's credibility determination is based explicitly or implicitly on the observation of the demeanor of witnesses testifying at a hearing, the Board cannot set the determination aside absent "sufficiently sound" reasons for doing so).

¶12     On review, the appellant also reiterates his assertions, raised below, that he was merely mistaken or confused about either the contents of recycled water or eligibility for hazardous duty pay.  PFR File, Tab 1 at 11‑13, 16‑17, 19‑20. These arguments constitute mere disagreement with the administrative judge's well‑reasoned findings and credibility determinations, and do not provide a basis to disturb the initial decision.  *See Yang v. U.S. Postal Service*, [115 M.S.P.R. 112](), ¶ 12 (2010) (finding that mere disagreement with the administrative judge's findings is insufficient to disturb the initial decision).  The appellant alleges that he began claiming hazardous duty pay as the result of a November 2013 training session on the subject of time card entries and pay administration provided by the agency's Human Resources Administration.  Yet, he failed to present any cogent explanation, either below or on review, as to why that training, which included a brief overview on hazardous duty pay, led him to believe that he qualified for such pay based on his work with recycled water.  PFR File, Tab 1 at 11‑13, 16-17, 19‑20; HCD (testimony of the appellant).  He also failed to explain how or why, as the Recycled Water Manager and as a subject matter expert in recycled water, he would be confused about the contents of recycled water.[4]  PFR File, Tab 1 at 11‑13, 16‑17, 19‑20; HCD (testimony of the appellant).

---

[4] Regarding the appellant's argument on review that the administrative judge erred in finding that he knowingly provided incorrect information because the proposing official admitted on cross  examination that it was "possible" that the appellant did not understand recycled water or hazardous duty pay, PFR File, Tab 1 at 16, the agency

¶13 In sum, for the reasons discussed above, we agree with the administrative judge that the agency proved that the appellant knowingly supplied incorrect information on his timecards.

> *The administrative judge correctly found that the appellant intended to defraud the agency.*

¶14 We further agree with the administrative judge that the agency proved that the appellant provided the incorrect information at issue with the intent to defraud the agency. ID at 10‑12. The intent element of a falsification charge requires two distinct showings: (1) that the appellant intended to deceive or mislead the agency; and (2) that he intended to defraud the agency for his own private material gain. *Leatherbury v. Department of the Army*, 524 F.3d 1293, 1300 (Fed. Cir. 2008); *O'Lague*, 123 M.S.P.R. 340, ¶ 6; *Boo*, 122 M.S.P.R. 100, ¶ 10. Intent may be established by circumstantial evidence or inferred when the misrepresentation is made with a reckless disregard for the truth or with conscious purpose to avoid learning the truth. *O'Lague*, 123 M.S.P.R. 340, ¶ 6. The Board may consider plausible explanations for an employee's providing incorrect information in determining whether the misrepresentation was intentional. *Boo*, 122 M.S.P.R. 100, ¶ 10. Likewise, the absence of a credible explanation for the misrepresentation can constitute circumstantial evidence of intent to deceive. *Nelson v. U.S. Postal Service*, 79 M.S.P.R. 314, ¶ 7 (1998). Whether intent has been proven must be resolved by considering the totality of the circumstances. *O'Lague*, 123 M.S.P.R. 340, ¶ 6.

---

bears the burden of proving the elements of a falsification charge by a preponderance of the evidence, which the Board's regulations define as "the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue." 5 C.F.R. §§ 1201.4(q), 1201.56(b)(1)(ii). Even if it were "possible" that the appellant misunderstood recycled water or hazardous duty pay, for the reasons discussed above, the administrative judge properly found the agency proved that it was more likely than not that he knew that the information that he provided was incorrect. ID at 9‑10.

¶15    Here, in finding that the agency proved that the appellant intended to defraud or deceive the agency, the administrative judge properly considered that the appellant first attempted to claim hazardous duty pay around the time that he learned that he would not receive a promotion or upgrade to a GS‑13.[5]  ID at 10; IAF, Tab 22 at 12‑14; HCD (testimony of Director J.S.).  The administrative judge also properly considered the lack of a credible explanation for the appellant's misrepresentation.  ID at 10, 12; *see Nelson*, [79 M.S.P.R. 314](#), ¶ 7.  Among other things, she found that, although the appellant attempted to attribute his actions to a misunderstanding of the November 2013 Human Resources Administration training, he did not claim hazardous duty pay until almost 3 months after that training, despite his purported concerns about exposure to recycled water.  ID at 10; IAF, Tab 21 at 17‑19; HCD (testimony of the appellant).

¶16    The administrative judge also considered and rejected the appellant's claims that he did not intend to defraud the agency because other agency employees were either aware of or authorized his claims for hazardous duty pay.  ID at 10‑12.  In pertinent part, the appellant claimed that he did not intend to defraud the agency because:  (1) his first‑level supervisor, M.E., was aware that he was claiming hazardous duty pay and signed his timecards; and (2) his third‑level supervisor, Lieutenant Colonel J.L., purportedly directed him to use the pay code for hazardous microorganisms.[6]  IAF, Tab 1 at 6, Tab 6 at 39‑42, Tab 22 at 4, 26; HCD (testimony of the appellant).

---

[5] The appellant previously had performed essentially the same duties for approximately 5 years without claiming hazardous duty pay.  HCD (testimony of Director J.S. and Deputy Assistant Chief S.W.).

[6] The appellant also argued below that he did not intend to deceive the agency because he consulted with an administrative assistant, L.P., about his use of hazardous duty pay codes.  IAF, Tab 22 at 12‑14; HCD (testimony of the appellant).  The appellant contacted L.P. because he received an error message when he attempted to input a

¶17     The administrative judge found that M.E.'s knowledge of the appellant's claims for hazardous duty pay did not demonstrate that the appellant lacked intent to deceive because M.E. did not understand many aspects of recycled water, and failed to ask pertinent questions about the appellant's claim for hazardous duty pay. ID at 11. The appellant's general assertions on review that M.E. was aware of and authorized his claims for hazardous duty pay do not provide a basis to disturb that finding.[7] PFR File, Tab 1 at 13, 15, 21; *see Yang*, 115 M.S.P.R. 112, ¶ 12; *Crosby*, 74 M.S.P.R. at 106; *Broughton*, 33 M.S.P.R. at 359. Moreover, the record reflects that the agency disciplined M.E. for his role in signing the appellant's timecards without ensuring that they were accurate. HCD (testimony of Deputy Assistant Chief S.W.).

¶18     The administrative judge further found that the appellant's claim that Lieutenant Colonel J.L. had authorized his claim for hazardous duty pay was "misguided at best and disingenuous at worst." ID at 10. It is undisputed that, in early 2014, when Lieutenant Colonel J.L. had been in his position for only a few

hazardous duty pay code applicable only to wage grade employees in the agency's electronic timekeeping system, and L.P. contacted the payroll office to assist him. IAF, Tab 22 at 12‑14; HCD (testimony of Lieutenant Colonel J.L.). The administrative judge found that L.P. did not authorize the appellant's claims for hazardous duty pay because her role was limited to answering questions regarding pay codes, and she had no authority to determine whether an employee was eligible for hazardous duty pay. ID at 10‑11. The appellant does not challenge that finding on review, and we discern no basis to disturb it. PFR File, Tab 1 at 12.

[7] We also have considered the appellant's argument on review that the administrative judge's statement that M.E. was a "plumber by training" was unsupported by the record. PFR File, Tab 1 at 15, 25‑26; ID at 11. We find that the administrative judge's error in stating that M.E. was trained as a plumber did not affect the appellant's substantive rights and does not form a basis for reversing the initial decision. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (stating that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision). The material fact is not that M.E. was specifically trained as a plumber, but rather, that he did not understand all aspects of recycled water, a finding supported by S.W.'s testimony. HCD (testimony of Deputy Assistant Chief S.W.); *see* 5 C.F.R. § 1201.115(a) (defining a material factual error as one that is of sufficient weight to warrant an outcome different from that of the initial decision).

months, he learned that the appellant was claiming hazardous duty pay based on exposure to poison and spoke with him about this because he was concerned. HCD (testimony of the appellant and Lieutenant Colonel J.L.). The administrative judge found Lieutenant Colonel J.L.'s testimony—that, during that conversation, he agreed to the hazardous microorganisms pay code because he relied on the appellant's representations and subject matter expertise—to be more credible than the appellant's testimony that Lieutenant Colonel J.L. directed him to use the pay code. ID at 10. Among other things, the administrative judge found that Lieutenant Colonel J.L. had nothing to gain with his frank testimony that he did not understand recycled water or hazardous duty pay, and should have asked more questions to fully understand the situation. ID at 10. She further found that, when the appellant spoke with Lieutenant Colonel J.L., he was aware that Lieutenant Colonel J.L. was new to his position and would not have a full appreciation of either hazardous duty pay or recycled water. ID at 10.

¶19 On review, the appellant challenges the administrative judge's credibility determination, arguing that Lieutenant Colonel J.L. was not credible because he was afraid that S.W. would hold him responsible. PFR File, Tab 1 at 11‑12. We find that this argument does not provide a basis to disturb the administrative judge's well‑reasoned credibility determination. *See Haebe*, 288 F.3d at 1301; *see also Thomas v. U.S. Postal Service*, 116 M.S.P.R. 453, ¶ 5 (2011) (finding that the credibility determinations of an administrative judge are virtually unreviewable on appeal). The record does not indicate that Lieutenant Colonel J.L. was afraid that S.W. would hold him responsible. HCD (testimony of Lieutenant Colonel J.L.). Moreover, even if Lieutenant Colonel J.L. had such a fear, it is illogical to conclude that it would motivate him to falsely testify that he

agreed to a hazardous duty pay code without sufficient knowledge and information.[8]

¶20    In sum, we agree with the administrative judge that the knowledge of or authorization by other agency employees, who did not understand recycled water or hazardous duty pay and relied on the appellant's subject matter expertise, does not indicate that the appellant did not intend to defraud the agency. ID at 10‑12. While the appellant's supervisors may bear responsibility for failing to question him and gain an understanding of whether his hazardous duty pay claims were warranted, it is the appellant's misconduct that is at issue in this appeal, not the failures of his supervisors.[9]

¶21    Finally, we agree with the administrative judge that the agency established that the appellant intended to defraud the agency for his private material gain; specifically, to obtain approximately $1,600 in hazardous duty pay to which he was not entitled. ID at 10; *see Boo*, 122 M.S.P.R. 100, ¶ 12. For this reason, and the reasons discussed above, we affirm the administrative judge's finding that the agency proved the charge of falsification of time and attendance records.

<u>The Board need not resolve whether the agency proved the charge of insubordinate defiance of authority by failure to follow policies/regulations.</u>

¶22    In the charge of insubordinate defiance of authority by failure to follow policies/regulations, the agency alleged that, in April 2014, the appellant failed to submit a required Quarterly Reclaimed Water Site Inspections Report (the

---

[8] We also have considered the appellant's argument on review that Lieutenant Colonel J.L. should have understood hazardous duty pay because he attended the November 2013 Human Resources Administration training, and find it to be both unpersuasive and inconsistent with the appellant's argument that this exact same training caused him to erroneously claim hazardous duty pay. PFR File, Tab 1 at 11; HCD (testimony of the appellant).

[9] For this reason, we find that the appellant's arguments regarding *Prouty v. General Services Administration*, 122 M.S.P.R. 117 (2014), a decision addressing the duty of Senior Executive Service employees to investigate and be aware of the activities of their subordinates, are inapposite. PFR File, Tab 1 at 26‑27.

quarterly report) to the state of California, resulting in a violation of law, and leaving Camp Pendleton subject to a notice of violation from the State Water Resources Control Board and a potential lawsuit under the Clean Water Act. IAF, Tab 6 at 35. The agency further alleged that the preparation and submission of this report were within the parameters of the appellant's position description and that he had submitted the report for the prior 2 years. *Id*.

¶23    The administrative judge found that the agency proved the charge. ID at 12-16. She found that it was undisputed that the appellant failed to prepare and submit the report. ID at 13. She further found that the appellant's position description required him to prepare and submit the report, ID at 15, and that his claim that his supervisors had agreed that he did not need to do so was not credible, ID at 14‑16. Finally, she found that, although the agency did not establish that its own policies or regulations required the appellant to prepare and submit the quarterly report, the fact that the report was required under California state law was sufficient to prove the charge. ID at 16.

¶24    Insubordination is the willful and intentional refusal to obey an authorized order of a superior officer that the officer is entitled to have obeyed. *Phillips v. General Services Administration*, 878 F.2d 370, 373 (Fed. Cir. 1989). A charge of "insubordinate defiance of authority" also requires proof of defiant or insolent behavior. *Alvarado v. Department of the Air Force*, 103 M.S.P.R. 1, ¶ 23 (2006); *Bennett v. Department of the Air Force*, 84 M.S.P.R. 132, ¶ 6 (1999).

¶25    On review, as he did below, the appellant argues that the agency did not prove the charge because it did not establish that he was ordered to prepare and submit the quarterly report.[10] PFR File, Tab 1 at 10, 17‑18; HCD (testimony of the appellant). We agree with him that this is cause for concern, when, as here, a failure to obey an order is an element of a charge of insubordinate defiance of

_____

[10] The appellant also contests the administrative judge's finding that his position description required him to prepare and submit the quarterly report, and challenges her credibility determination. PFR File, Tab 1 at 8‑10, 17.

authority.[11] *See Phillips*, 878 F.2d at 373; *Alvarado*, [103 M.S.P.R. 1](#), ¶ 23; *Bennett,* [84 M.S.P.R. 132](#), ¶ 6.  Neither the proposal nor decision letters reference the failure to obey an order, IAF, Tab 6 at 20‑23, 34‑39, and, in the initial decision, the administrative judge did not make any finding that the appellant failed to obey an order, ID at 12‑16.

¶26    Nevertheless, it is arguable that, because the agency charged the appellant with "insubordinate defiance of authority by failure to follow policies/regulations," rather than "insubordinate defiance of authority," the agency was required to establish only that he failed to comply with policies or regulations, and an order was not required.  *See* IAF, Tab 6 at 35.  We need not resolve this issue, though, because, as discussed below regarding the reasonableness of the penalty, we find that the penalty of removal would be reasonable even if the charge of falsification of time and attendance records were the sole sustained charge.[12]

The agency proved a nexus between the charge of falsification of time and attendance records and the efficiency of the service.

¶27    On review, the appellant challenges the administrative judge's finding that the agency proved a nexus between his misconduct and the efficiency of the service, arguing that she erroneously stated that his misconduct affected the morale of his subordinates and other agency staff, when in fact he had no subordinates, and there was no proof that his misconduct affected anyone's morale.  PFR File, Tab 1 at 3‑4; ID at 22.  Even assuming that the administrative

---

[11] Although the agency may have overlooked the appellant's failure to prepare and submit the quarterly report, the Board is required to review the agency's decision on an adverse action solely on the grounds invoked by the agency, and may not substitute what it considers to be a more adequate or proper basis.  *Fargnoli v. Department of Commerce*, [123 M.S.P.R. 330](#), ¶ 7 (2016).

[12] For this same reason, we do not address the appellant's arguments regarding the requirements of his position description and the administrative judge's credibility determination.  PFR File, Tab 1 at 8‑10, 17.

judge erred in these findings, her errors would not provide a basis for reversing the initial decision. *See Panter*, 22 M.S.P.R. at 282.

¶28     Falsification is inherently destructive of the agency's faith in an employee's trustworthiness and honesty, essential elements in the relationship of an employer and employee. *Connett v. Department of the Navy*, 31 M.S.P.R. 322, 328 (1986), *aff'd*, 824 F.2d 978 (Fed. Cir. 1987) (Table). The Board has consistently found a nexus between falsification of records and the efficiency of the service. *See Washington v. Department of Agriculture*, 22 M.S.P.R. 374, 376 (1984); *Trybul v. Department of the Army*, 22 M.S.P.R. 290, 292 (1984), *aff'd*, 776 F.2d 1059 (Fed. Cir. 1985) (Table). For these reasons, regardless of whether the appellant had subordinates or his misconduct affected the morale of other staff, the administrative judge correctly concluded that the agency established a nexus between the charge of falsification of time and attendance records and the efficiency of the service. ID at 22‑23.

The administrative judge correctly found that the appellant failed to prove his affirmative defense of harmful procedural error.

¶29     On review, the appellant contests the administrative judge's finding that he failed to prove his affirmative defense of harmful procedural error. PFR File, Tab 1 at 21‑26. The affirmative defense was based on a claim that the agency violated a provision of its Civilian Human Resources Manual when it allegedly considered a report prepared by its Office of the Inspector General (OIG) in reaching the decision to remove him. IAF, Tab 22 at 3‑4, 20‑21. Based on the testimony of the proposing and deciding officials, the administrative judge found that neither of them had reviewed the OIG report and, therefore, the appellant did not prove his claim of harmful procedural error. ID at 19‑21.

¶30     On review, the appellant argues that the testimony of the proposing and deciding officials was not credible. PFR File, Tab 1 at 21‑22. The administrative judge considered these same arguments below, and addressed them

in the initial decision. ID at 20. The appellant's repetition of his arguments on review does not provide a basis to disturb the administrative judge's finding that he failed to prove his affirmative defense of harmful procedural error. *See Haebe*, 288 F.3d at 1301; *Thomas*, 116 M.S.P.R. 453, ¶ 5; *Davison v. Department of Veterans Affairs*, 115 M.S.P.R. 640, ¶ 9 (2011).

<u>The Board will not consider the appellant's new argument in the first instance on review that the agency violated his due process rights.</u>

¶31        For the first time on review, the appellant contends that the agency violated his due process rights when it failed to provide him with a memorandum from a General that the proposing official considered in preparing the notice of proposed removal. PFR File, Tab 1 at 22‑23; HCD (testimony of Deputy Assistant Chief S.W.). We decline to consider this argument because the appellant has failed to demonstrate that it is based on new and material evidence that previously was unavailable to him despite due diligence. *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (finding that the Board generally will not consider an argument raised for the first time on review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence); 5 C.F.R. § 1201.24(b) (requiring an appellant to show good cause for raising claims or defenses for the first time after the conference defining the issues in the case); *see Harding v. U.S. Naval Academy*, 567 F. App'x 920, 924 (Fed. Cir. 2014) (finding that the U.S. Court of Appeals for the Federal Circuit would not consider an appellant's due process claim raised in the first instance on appeal).[13]

---

[13] Although *Harding* is an unpublished decision, the Board may rely on unpublished Federal Circuit decisions when, as here, it finds the court's reasoning persuasive. *Mauldin v. U.S. Postal Service*, 115 M.S.P.R. 513, ¶ 12 (2011).

The penalty of removal is reasonable for the charge of falsification of time and attendance records.

¶32    Because we make no finding as to whether the agency proved the charge of insubordinate defiance of authority by failure to follow policies/regulations, we must evaluate whether the penalty of removal is reasonable if the charge of falsification of time and attendance records were the sole sustained charge.  For the reasons discussed below, we conclude that the penalty of removal is reasonable.

¶33    When the Board does not sustain all of the agency's charges, it will carefully consider whether the sustained charges merit the agency's imposed penalty.  *See Boo*, 122 M.S.P.R. 100, ¶ 17.  In such a case, the Board may mitigate the agency's penalty to the maximum reasonable penalty so long as the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges.  *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999).  Here, the agency has not so indicated and, therefore, the Board must apply the relevant *Douglas* factors to determine the maximum reasonable penalty for the appellant's sustained misconduct.[14]  *See Boo*, 122 M.S.P.R. 100, ¶ 17.

¶34    In evaluating the penalty, the Board will consider, first and foremost, the nature and seriousness of the misconduct and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or was frequently repeated.  *Gaines v. Department of the Air Force*, 94 M.S.P.R. 527, ¶ 9 (2003).  Falsification is a serious offense that affects an employee's reliability, veracity, trustworthiness, and ethical conduct, and the Board has frequently upheld the penalty of removal for a sustained charge of falsification.  *O'Lague*, 123 M.S.P.R. ¶ 20; *Gebhardt v. Department of the Air*

---

[14] In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305–06 (1981), the Board articulated a nonexhaustive list of 12 factors, both aggravating and mitigating, that are relevant to the penalty determination in adverse action cases.

*Force*, 99 M.S.P.R. 49, ¶ 21 (2005), *aff'd*, 180 F. App'x 951 (Fed. Cir. 2006). In addition, the appellant's false claims that recycled water contained poison or hazardous microorganisms eroded the agency's trust and confidence in his ability to serve as a Recycled Water Manager and placed the safety and integrity of Camp Pendleton's Water Resource Division into question. IAF, Tab 6 at 21, 36; HCD (testimony of Deputy Assistant Chief S.W.); *see Talavera v. Agency for International Development*, 104 M.S.P.R. 445, ¶ 12 (2007) (finding that an agency's loss of trust in an employee is a significant aggravating factor). Furthermore, the appellant's misconduct was both intentional and repeated, in that he provided false information on his timecards on four occasions, and continued to do so even after Lieutenant Colonel J.L. spoke with him about his improper use of the hazardous duty pay code for poison. IAF, Tab 6 at 39‑42; HCD (testimony of the appellant and Lieutenant Colonel J.L.). Finally, although not discussed by the proposing or deciding officials, the appellant's attempt to blame his supervisors for failing to detect his falsification reflects a lack of remorse for his actions, which is an aggravating factor. *See* IAF, Tab 6 at 30, Tab 22 at 4; *see also Neuman v. U.S. Postal Service*, 108 M.S.P.R. 200, ¶ 26 (2008) (finding that an appellant's rationalizations and lack of remorse were aggravating factors).

¶35      As the deciding official recognized, the appellant's 37 years of service, lack of prior discipline, and satisfactory performance are significant mitigating factors. IAF, Tab 6 at 21. However, the Board has found that falsification is a serious offense that may warrant removal, even for employees with extensive Federal service, satisfactory performance, and no prior disciplinary record. *See Hylick v. Department of the Air Force*, 85 M.S.P.R. 145, ¶¶ 22‑24 (2000) (finding that the penalty of removal was reasonable for 2 charges of deliberate misrepresentation when an appellant had 25 years of service, good performance, and no prior disciplinary record); *Tanner v. Department of*

*Transportation*, [65 M.S.P.R. 169](), 174 (1994) (finding that the penalty of removal was reasonable for charges of falsification and misrepresentation when an appellant had 12 years of Federal service, no prior disciplinary record, and numerous commendations); *Walcott v. U.S. Postal Service*, [52 M.S.P.R. 277](), 284 (finding that the penalty of removal was reasonable for a falsification charge when an appellant had 27 years of Federal service and no prior disciplinary record), *aff'd*, 980 F.2d 744 (Fed. Cir. 1992) (Table); *Pitts v. Department of the Air Force*, [29 M.S.P.R. 108](), 110 (1985) (finding that the penalty of removal was reasonable for charges of falsification and deliberately falsifying a material fact in connection with a matter under official investigation when an appellant had 30 years of Federal service, outstanding performance, and no prior disciplinary record), *aff'd*, [795 F.2d 1020]() (Fed. Cir. 1986). Here, in light of the seriousness of the appellant's misconduct and the other aggravating factors discussed above, we find that the penalty of removal is reasonable.

¶36    Finally, we have considered the appellant's argument that his removal did not promote the efficiency of the service because the agency did not remove him until more than 2 weeks after the date specified in the decision letter, and find it unpersuasive. PFR File, Tab 1 at 24‑25. The agency wanted to afford the appellant time to consider the last chance agreement.[15] HCD (testimony of Captain W.W.). Under the circumstances at issue, we find that the agency's delay in effectuating the appellant's removal does not preclude a finding that his removal promotes the efficiency of the service. *See Kumferman v. Department of the Navy*, [19 M.S.P.R. 5](), 6–7 (1984) (finding an appellant's removal promoted

---

[15] On review, the appellant takes issue with the administrative judge's statement that the appellant was negotiating with the agency regarding the last chance agreement, arguing that there was no evidence of negotiations. PFR File, Tab 1 at 24‑25; ID at 23. However, it is irrelevant whether the agency was negotiating or merely affording him time to consider the last chance agreement. *See Panter*, 22 M.S.P.R. at 282.

the efficiency of the service despite an agency's 21–month delay in initiating the removal action), *aff'd*, 785 F.2d 286 (Fed. Cir. 1986).

¶37     Accordingly, we affirm the initial decision as modified herein.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must receive your petition for review within 60 days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both.  Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: _____
                Jennifer Everling
                Acting Clerk of the Board

Washington, D.C.