NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JANE SPHATT,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

---

2020-1451

---

Petition for review of the Merit Systems Protection Board in No. NY-0752-19-0146-I-1.

---

Decided: April 7, 2021

---

ALAN EDWARD WOLIN, Wolin & Wolin, Jericho, NY, for petitioner.

TANYA KOENIG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR., LOREN MISHA PREHEIM.

---

Before LOURIE, TARANTO, and STOLL, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Jane Sphatt was removed from her position as an Immigration Officer at the Department of Homeland Security's United States Citizenship and Immigration Services (the Agency) in April 2019 for misuse of her government position and government credentials, lack of candor, and unauthorized use of a government database. The Merit Systems Protection Board affirmed the Agency's decision, finding all four charges supported by the evidence and the penalty of removal reasonable. J.A. 7–68; *Sphatt v. Dep't of Homeland Security*, No. NY-0752-19-0146-I-1, 2020 WL 71044 (M.S.P.B. Jan. 2, 2020). The Board also rejected Ms. Sphatt's affirmative defenses, including that the removal was tainted by procedural defects and was based on conduct that occurred too long ago. We affirm.

I

Ms. Sphatt began working for the Office of Security and Integrity (OSI) within the Agency in 2002 and eventually became a Senior Immigration Services Officer. In March 2016, the Agency received an internal complaint that, in May 2015, in connection with an immigration matter involving Ms. Sphatt's close friend, Jing Pei Mao, and his wife Ghun Feng Gan, Ms. Sphatt had included her official job title and a photocopy of her government credentials when submitting an affidavit to attest to the bona-fide nature of Mr. Mao and Ms. Gan's marriage. The complaint came from an Agency employee handling the immigration matter of Mr. Mao and Ms. Gan. The same employee also filed a second complaint after Ms. Sphatt, on March 17, 2016, again included her official title and her credentials when submitting another affidavit in the same matter in support of Mr. Mao and Ms. Gan. In both documents, Ms. Sphatt also provided her government e-mail address and office phone number as preferred contact information for any further inquiries.

Following an internal investigation, on May 2, 2017, a Disciplinary Review Board of the OSI issued a Notice of Proposed Seven Day Suspension to Ms. Sphatt for misuse of her government position and misuse of government credentials. J.A. 239, 1057–63. On June 27, 2017, while Ms. Sphatt's suspension notice was pending review, the Agency received a separate complaint stating that, during the internal investigation, Ms. Sphatt made certain representations that conflicted with information she provided in employment security paperwork. J.A. 417–25. The investigation into this new complaint unearthed thirteen occasions on which Ms. Sphatt used the Treasury Enforcement Communication System (TECS)—a secure government system that provides access to law enforcement databases and individuals' personal information—to look for information about herself and her relatives. J.A. 407; *see also* J.A. 626. On October 23, 2018, the Agency issued a Notice of Proposed Removal, which stated four charges: the two previous charges for misuse of government position and credentials, and additional charges for lack of candor and unauthorized use of TECS. J.A. 1040–56.

On April 25, 2019, the deciding official agreed with the proposal to remove Ms. Sphatt. The official found in favor of the Agency on all four charges. In fact, the official found in favor of all specifications alleged in support of all the charges except for the charge of lack of candor, as to which the official ruled for the Agency on three of seven original specifications. J.A. 112–22. Ms. Sphatt appealed the decision to the Board on May 13, 2019.

The Board, in an Initial Decision rendered by a Board administrative judge, upheld the Agency's removal decision. The Board found misuse of government position and credentials (treated as merged because they involved the same incidents, J.A. 15) based on all the circumstances surrounding Ms. Sphatt's use of her government title and credential in her filings in support of private interests. J.A. 16–23. The Board also found lack of candor in Ms. Sphatt's

representations on Agency security forms that she did not have "close and/or continuing contact" with any foreign national during a given time, notwithstanding the evidence of her contacts with her nephew (a foreign national then) and what was inferable about her contacts with Ms. Gan (a foreign national) from Ms. Sphatt's affidavits attesting to her knowledge of the bona fides of Ms. Gan's marriage to Mr. Mao. J.A. 23–31. The Board similarly found unauthorized use of TECS; the Board found that the Agency prohibited use of the system for personal purposes, even in a training setting, and that Ms. Sphatt was aware of the prohibition. J.A. 36–41. The Board then rejected Ms. Sphatt's affirmative defenses, J.A. 42–51, and upheld removal as a reasonable penalty to promote the efficiency of the service, J.A. 51–60.

The Board's Initial Decision became final on February 6, 2020. J.A. 61. Ms. Sphatt timely appealed. We have jurisdiction under 5 U.S.C. § 7703(b)(1)(A).[1]

II

We must uphold the Board decision unless we conclude it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," was "obtained without procedures required by law, rule, or regulation having been followed," or is "unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Smith v. Gen. Servs. Admin.*, 930 F.3d 1359, 1364 (Fed. Cir. 2019). On factual questions, we do not "substitute our judgment for that of the board," *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1366 (Fed. Cir. 2012), but ask only if, on all the evidence, the Board could reasonably find the facts it did, even if a contrary finding

---

[1]    Ms. Sphatt had included her affirmative defenses of race and age discrimination, which the Board rejected, but she has dropped those claims. *See* 5 U.S.C. § 7703(b)(2).

might also have been reasonable, *Jones v. Dep't of Health & Hum. Servs.*, 834 F.3d 1361, 1366 (Fed. Cir. 2016); *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 619–20 (1966); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

## A

### 1

To prove the charge of misuse of government position (Charge 1), it sufficed for the Agency to prove that Ms. Sphatt misused her public office for private gain. *See Gardner v. Dep't of Veterans Affs.*, 123 M.S.P.R. 647, 652 (2016); *see also* 5 C.F.R. § 2635.702. Relatedly, the Agency could show misuse of credentials (Charge 2) by proving that Ms. Sphatt used her government credentials without authorization. *See O'Neill v. Dep't of Hous. & Urb. Dev.*, 220 F.3d 1354, 1358–59 (Fed. Cir. 2000); *Fuller v. Dep't of Navy*, 465 F. App'x 949, 952 (Fed. Cir. 2012) (per curiam); *see also* 5 C.F.R. § 2635.704. Here, the Board determined that Charges 1 and 2 "are based on the same incident and involve essentially the same misconduct," and the Board treated the two charges together. J.A. 15 (citing *Mann v. Dep't of Health & Human Servs.*, 78 M.S.P.R. 1, 6–7 (1998)). Ms. Sphatt does not challenge that choice to merge the charges.

The Board reasonably found the charges proved based on Ms. Sphatt's use of her official government title and credentials, accompanied by her government office contact information, in connection with her affidavits attesting to the bona fides of the marriage of her close friend, Mr. Mao (a naturalized citizen), to Ms. Gan (a foreign national). Ms. Sphatt admitted that she knew of Mr. Mao and Ms. Gan's difficulties in obtaining a visa for Ms. Gan to enter the United States, J.A. 1806 (Day 2 Tr. 81:9–13), and she also testified to her concern, based on her experience as an immigration officer, that certain facts about the couple's union (*e.g.*, a large age difference) might be viewed by an Agency adjudicator as "fraud indicators" and generate

doubts about the legitimacy of the marriage, J.A. 1806–08 (Day 2 Tr. 81:17–83:11). When asked directly, Ms. Sphatt confirmed that including her credentials was done to enhance her credibility in her attestation. *See* J.A. 1812 (Day 2 Tr. 87:3–11). Based on these and other facts, the Board reasonably found that Ms. Sphatt improperly used her position and credentials to attempt to influence the petition process to aide her good friend and his wife, which here amounts to use for a form of personal gain, whether or not the adjudicator of the immigration matter was actually influenced. J.A. 18–20; *see also* 5 C.F.R. § 2635.702 ("An employee shall not use his public office for his own private gain, . . . or for the private gain of friends, relatives, or persons with whom the employee is affiliated in a nongovernmental capacity . . . ."). Although Ms. Sphatt asserted her lack of such intent, the Board reasonably found otherwise. *See Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002) (affording great deference to an administrative judge's credibility determinations).

The Board's upholding of Charges 1 and 2, we conclude, is supported by substantial evidence.

2

To sustain a charge of lack of candor, it sufficed for the Agency to prove that Ms. Sphatt gave incorrect or incomplete information to the Agency and did so knowingly. *Ludlum v. Dep't of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002). "Lack of candor" is "a broader and more flexible concept" than "falsification." *Id.* "Although lack of candor necessarily involves an element of deception, 'intent to deceive' is not a separate element of that offense—as it is for 'falsification.'" *Id.* at 1284–85. In this case, substantial evidence supports the Board's finding that the Agency proved each of three specifications underlying the charge of lack of candor.

Two of the specifications involve Ms. Sphatt's responses on an Agency Questionnaire for National Security

Positions (the SF-86 form) in 2015, and one specification involves her withholding of information during an official inquiry into her responses on the SF-86 form. Section 19 of the SF-86 form at issue asked Agency employees if, during the previous seven years, they "have had, close and/or continuing contact with a foreign national . . . with whom [they] are bound by affection," J.A. 480, with "foreign national" defined as "any person who is not a citizen or national of the [United States]," J.A. 455. The form also included questions about living with or financially supporting foreign nationals during the same period. J.A. 480–81. On the SF-86 form Ms. Sphatt submitted May 4, 2015, she answered "No" to those questions.

The Board reasonably found that the Agency proved the allegation of two specifications that Ms. Sphatt was not candid in the SF-86 form. Specifically, the evidence supports the finding of lack of candor about Ms. Sphatt's relationships and contacts with Ms. Gan, a foreign national within the seven-year period, and with her nephew, who also was a foreign national within the period and who lived with Ms. Sphatt for part of the time and received financial support from her.

As to the former, there was evidence that Ms. Sphatt had herself told OSI officials that she had weekly contact with Mr. Mao and "closely observed [Ms. Gan] over the past 2 years." J.A. 420. In her affidavit (in support of the marriage) filed two weeks after she submitted the SF-86 form, Ms. Sphatt asserted, "we have close contact with each other," which the Board reasonably found was referring to both Mr. Mao and Ms. Gan (whom she saw together fairly often). J.A. 27–28. The Board also reasonably determined: "[I]t is axiomatic that if one knows enough about a person to vouch for his or her marriage, the person who vouches for it can be considered 'bound by affection.'" J.A. 27.

Regarding her relationship with her nephew, Ms. Sphatt testified to the closeness of her relationship, stating

that because of her familial ties, she "would give [her nephew's family] anything, everything I have," and indeed she had given her nephew and his father a large sum of money as a gift when they arrived in the United States. J.A. 1790–91 (Day 2 Tr. 65:8–66:3).   In addition, Ms. Sphatt's nephew used her address when he first came to the United States and continued to use her address to receive mail until at least May 2015.  J.A. 1791 (Day 2 Tr. 66:4–8), 1797–98 (Day 2 Tr. 72:20–73:6).  The Board reasonably found it "improbable" that Ms. Sphatt's failure to list her nephew was "merely an inadvertent oversight," J.A. 33, especially given her "unblemished work record" as an employee "well-versed in immigration laws," J.A. 34. *See Ludlum*, 278 F.3d at 1284 (lack of candor "may involve a failure to disclose something that, in the circumstances, should have been disclosed in order to make the given statement accurate and complete").

The remaining specification of failure to be forthcoming in speaking to the OSI investigators rests on much the same nondisclosure of information as the SF-86 form specifications.  We cannot say that the Board lacked substantial evidence in finding this specification proved based on Ms. Sphatt's guarded interactions with the investigators, when faced with facially contradictory statements in her affidavits and SF-86 form responses.  Given Ms. Sphatt's tenure and experience with immigration procedures, substantial evidence supports the Agency's determination that Ms. Sphatt was less than forthcoming.

The Board's upholding of Charge 3, we conclude, is supported by substantial evidence.

3

The Agency's fourth and final charge alleged unauthorized use of TECS.  To sustain this charge, it sufficed for the Agency to prove that Ms. Sphatt placed personal queries in TECS without authorization.  *See Hernandez v. Dep't of Homeland Security*, 324 F. App'x 908, 910 (Fed. Cir. 2009)

(per curiam); *see also* 5 C.F.R. § 2635.704(a).  The Board reasonably found that the Agency so proved.

Ms. Sphatt does not dispute that she accessed TECS multiple times to place queries about herself and her relatives, but she argues that her queries were in the course of training new employees and therefore cannot support the Agency's disciplinary decision.  This argument fails.  The Agency presented substantial evidence that use of TECS to make inquiries about oneself and one's relatives was an unauthorized use, even if for training.  Training materials for TECS, as well as the warning screen that Ms. Sphatt saw each time she used the system, expressly state that personnel "cannot use the live system, TECS Production, to learn TECS by performing test queries."  J.A. 646; *see also* J.A. 38 (citing Day 2 Tr. 46:15–18).  Ms. Sphatt completed training on TECS multiple times during her tenure, and in the training she was notified that employees were not permitted to use TECS in such a manner.  *See* J.A. 1777 (Day 2 Tr. 52:2–4).  Ms. Sphatt also admitted to knowing that Agency policy prohibited such activity.  *See* J.A. 1786 (Day 2 Tr. 61:7–10) ("Q Isn't it true that while you were an Immigration Services Officer that you were aware that you could not query yourself, relatives, or your spouse in TECS?  A Yes, I know that.").

The Board's upholding of Charge 4, we conclude, is supported by substantial evidence.

B

Beyond challenging the finding that the Agency proved its charges, Ms. Sphatt argues that the conduct identified in the proven charges bore an insufficient nexus to the efficiency of the service and that removal was an unreasonably harsh penalty for her conduct.  Sphatt Opening Br. at 24–37.  We disagree.

1

The statute declares that a disciplinary action of the sort at issue here must be "for such cause as will promote the efficiency of the service," 5 U.S.C. § 7513, a requirement that is met if "the employee's misconduct is likely to have an adverse impact on the agency's performance of its functions," *Brown v. Dep't of the Navy*, 229 F.3d 1356, 1358 (Fed. Cir. 2000). "'We give wide berth to agency decisions as to what type of adverse action is necessary to "promote the efficiency of the service," provided that the agency's decision bears some nexus to the reason for the adverse action.'" *Avalos v. Dep't of Hous. & Urb. Dev.*, 963 F.3d 1360, 1371 (Fed. Cir. 2020) (citation omitted).

Ms. Sphatt argues that the Board could not reasonably find an appropriate nexus here because her "job performance and effectiveness were not diminished." Sphatt Opening Br. at 25. But Ms. Sphatt fails to address the substantial evidence that her misconduct affected management's trust and confidence in her ability to support the Agency's mission. *See* J.A. 52 ("I find that there is a legitimate government interest of not having the power of the government of the United States bear in personal matters."). As the Board noted, the deciding official testified to his lack of trust in Ms. Sphatt: "I have concerns about . . . the integrity of the officer." J.A. 53 (alteration in original); *see also* J.A. 1524 (same); J.A. 1386 ("Not only do[] her actions impair her credibility, but the credibility of [United States Customs and Immigration Services]."). The Board's determination to credit that testimony supports the nexus finding.

2

Review of an agency's penalty determination is "highly deferential." *Bieber*, 287 F.3d at 1365. "'It is a well-established rule of civil service law that the penalty for employee misconduct is left to the sound discretion of the agency,'" guided by the factors outlined in *Douglas v. Veterans*

*Administration*, 5 M.S.P.R. 280, 305–07 (1981).  *Norris v. SEC*, 695 F.3d 1261, 1266 (Fed. Cir. 2012) (per curiam) (citation omitted).  We see no basis for determining that the penalty here was "grossly disproportionate to the offense charged," *Bieber*, 287 F.3d at 1365, or should be disturbed for any other reason.

Ms. Sphatt first challenges the reasonableness of her removal, in part, based on the Agency's initial response (a proposed 7-day suspension) to Charges 1 and 2, when those charges stood alone.  Sphatt Opening Br at 28–29.  But those charges ended up not standing alone.  The decision about the appropriate penalty for the totality of the charges, after proper consideration by the deciding official, is to be respected unless it is "totally unwarranted in the circumstances such that it is constitutes an abuse of discretion" as to the full charges found supported.  *Robinson v. Dep't of Veterans Aff.*, 923 F.3d 1004, 1016–17 (Fed. Cir. 2019) (internal quotation marks omitted).

The deciding official did not abuse the vested discretion in determining: "I have considered that the good order, integrity, and reputation of [the Agency] was undermined by your misconduct"; and "I have completely lost trust and confidence in your judgment, reliability, and dependability."  J.A. 117.  The same is true for the determination: "I find that your inability to accept any responsibility demonstrates that you have not learned from your conduct and have not reformed your behavior."  *Id.*  The deciding official could determine, within the wide discretion permitted, that the conduct was serious enough, and the chances of Ms. Sphatt's rehabilitation slim enough, to warrant removal.  Moreover, Ms. Sphatt has not shown error in the Board's affirmance of the deciding official's determination that Ms. Sphatt's situation was not comparable to the situation in any identified disciplinary matter involving another employee in which a penalty less than removal was imposed.  J.A. 58.

Given the deciding official's consideration of the *Douglas* factors, and our upholding all four charges against Ms. Sphatt, we cannot say the deciding official's removal decision represents reversible error.

C

Ms. Sphatt challenges aspects of the Agency's decision as violating certain asserted procedural rights. In particular, she alleges that the Agency improperly failed to impose lesser discipline before resorting to removal, improperly considered certain documents, and improperly punished her for conduct that took place too far in the past. *See* Sphatt Opening Br. at 19, 37–40. For these contentions, Ms. Sphatt must identify a law, rule, or regulation that the Agency improperly ignored or violated. *See* 5 U.S.C. § 7703(c)(2); *see also Diaz v. Dep't of Air Force*, 63 F.3d 1107, 1108–09 (Fed. Cir. 1995); 5 C.F.R. § 1201.56(c). For all but the undue-delay challenge, Ms. Sphatt invokes, in this court, only the standard of harmful procedural error. *See* Sphatt Opening Br. at 1–2, 5–6, 19, 37–40. Under that standard, she must show that the error was "likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error." 5 C.F.R. § 1201.4(r); *see also Ward v. U.S. Postal Serv.*, 634 F.3d 1274, 1281 (Fed. Cir. 2011). We reject these challenges.

For the Agency's choice to forgo progressive discipline, Ms. Sphatt has not identified any law, rule, or regulation that requires a progressive disciplinary procedure that starts with a measure short of removal. Agency policy in fact permits the opposite: Progressive discipline "is applied in all cases *except* . . . where management deems the misconduct is egregious enough to warrant more serious action up to and including removal." J.A. 1071 (U.S. Citizenship and Immigration Services, Discipline and Adverse Actions, Management Directive No. 256-002 (2010)). Therefore, Ms. Sphatt has failed to identify harmful procedural error.

Ms. Sphatt separately argues that the deciding official improperly used two categories of evidence beyond that considered by the Discipline Review Board. One category consists of "documents pertaining to [Ms. Gan and Ms. Sphatt's relatives] . . . relied upon in support of Charge 3 – Lack of Candor." J.A. 193. The other consists of documents about discipline of other employees that the deciding official looked at to see if they presented situations that were comparable to this matter and yet resulted in a lesser penalty than removal—a penalty adopted in this case based on the official's analysis of the seriousness of the conduct, other *Douglas* factors, and the Agency's Table of Offenses and Penalties, J.A. 116–18 (as to all of which Ms. Sphatt was given unchallenged notice, *see* J.A. 85–88 (notice of proposed removal)).

As to both categories, Ms. Sphatt's challenge fails, as the Board concluded. J.A. 47–49, 58–59. As to the first, Ms. Sphatt was given an opportunity to respond to the documents and instead elected to "rely upon her prior oral reply," J.A. 186, and she has not shown that the Agency would have reached a different outcome in the absence of this evidence. As to the second, even though she has had access to the documents (about potential comparables) since the discovery process that preceded the Board hearing, she has not shown how those documents, or what she would have said about them had she been given pre-termination access to them, might have led to a penalty less severe than removal. In these circumstances, we see no basis in these challenges for setting aside the Board affirmance of the removal. *See Harding v. United States Naval Acad.*, 567 F. App'x 920, 925 (Fed. Cir. 2014).

Finally, Ms. Sphatt suggests that the Agency improperly considered the TECS charge after a length of time that was "unreasonable, prejudicial and, as such, violative of due process." *See* Sphatt Opening Br. at 19. We disagree. The only authority she cites is *Baldwin v. Department of Veterans Affairs*, 109 M.S.P.R. 392 (2008), which invokes

the key requirements of laches, stating: "[T]he Board has recognized that a charge may be dismissed if an agency's delay in proposing the adverse action is unreasonable and prejudicial to the appellant." *Id.* at 398; *see also Cornetta v. United States*, 851 F.2d 1372, 1378 (Fed. Cir. 1988) (en banc) (requiring proof of prejudice for successful defense of laches). But, as the Board determined, J.A. 49–51, Ms. Sphatt has not shown unreasonable delay in discovering (or therefore acting on) the TECS violations or that the delay was prejudicial. We therefore see no basis in this challenge for disturbing the Board's decision.

## III

For the foregoing reasons, we affirm the decision of the Merit Systems Protection Board.

### AFFIRMED

### COSTS

The parties shall bear their own costs.