# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

DARLYN C. SCOVELL,
             Appellant,

          v.

DEPARTMENT OF THE NAVY,
             Agency.

DOCKET NUMBER
SF-0752-16-0355-I-1

DATE: January 31, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Daphne E. Barbee, Esquire, Honolulu, Hawaii, for the appellant.

Ellen Johnston, Washington Navy Yard, D.C., for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which sustained the agency's chapter 75 removal action. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except to MODIFY the administrative judge's analysis of the appellant's claim that the agency violated her due process rights, we AFFIRM the initial decision.

## BACKGROUND

¶2      The agency removed the appellant from her position as a GS-6 Lead Child Development Program Technician for a pre-kindergarten child development center based on her failure to follow the following instructions on child guidance techniques:

> 15.3.b.  The child guidance policy shall be designed to assist the child in developing self-control, self-respect, and respect and consideration for the rights and property of others. Clear behavioral limits for children shall be established based on positive guidance (what to do vice what not to do) and redirecting children toward desired activities.

> 15.3.e.  Restricting the child's movements or placing the child in a confined space as a form of punishment is prohibited.

Initial Appeal File (IAF), Tab 8 at 12-14, 37, Tab 9 at 90-91, Tab 10 at 30.[2]

---

[2] The agency charged the appellant with violating the Office of the Chief of Naval Operations Instruction 1700.9e, Chapter 15.3, Child Guidance Techniques, sections b and e. IAF, Tab 8 at 37, Tab 9 at 90-91. Chapter 15 provides guidance and requires training on child abuse prevention precautions, including discipline techniques, and mandates the implementation of a child guidance policy and a touch policy. IAF, Tab 9 at 83-95.

¶3	In support of the charge, the agency relied in part on a video recording showing the appellant interacting with a child in her classroom on September 30, 2015. IAF, Tab 8 at 37-38, Tab 13 (video). The agency specified that the video showed the appellant wrapping her arms and legs around the child, restraining him on her lap for approximately 10 minutes, and "pulling him by the arms and legs" when he repeatedly attempted to escape her grasp. IAF, Tab 8 at 37-38. The agency also stated that an agency Incident Determination Committee (IDC) concluded that her case met the criteria for physical abuse of a child. *Id.* at 38.

¶4	In reply to her proposed removal, the appellant acknowledged that she should have used different techniques to redirect the child's attention; however, it was unclear from her response whether she believed that her conduct violated the agency's Child Guidance and Touch Policy (Touch Policy).[3] *Id.* at 31-32; IAF, Tab 9 at 95. The appellant also argued that there were mitigating factors, she was a "good candidate for rehabilitation and re-education," and she was not charged with corporal punishment. IAF, Tab 8 at 31-32. As to the IDC determination, she stated that the committee met in a closed-door session to consider an allegation of child abuse made against her, and she received no due process in that proceeding. *Id.* at 30. She also stated that the committee did not speak to her, she had no opportunity to confront her accusers or view the evidence presented against her, and the determination was not yet final. *Id.*

¶5	The deciding official sustained the appellant's removal, stating that there was credible evidence that she violated the agency's "no touch" policy by

---

[3] To this end, the appellant made the following statements in her written reply: (1) "Nothing in the record, or in my memory, indicates that I could be terminated for a minor violation of the Touch Policy"; (2) "my behavior was consistent with, not in violation of the agencies Child Guidance and Touch Policy"; (3) "Termination is an extreme reaction to a minor (yet real) violation of the Touch Policy by an otherwise outstanding and trustworthy employee"; (4) "My actions, as far as I can tell, fall squarely in line with the definition of appropriate touch, per the written policy given to me"; (5) "I do not disagree that on September 30, 2015 I restrained a child, consistent with our Touch Policy." IAF, Tab 8 at 30-32 (grammar and punctuation in original).

intentionally "restricting the child's movements or placing the child in a confined space as a form of punishment." *Id.* at 12-13, 25. He considered her 14 years of Federal service, acceptable performance rating, performance, and lack of prior discipline, but he found no potential for rehabilitation due to the nature of her offense. *Id.* at 13, 25-27. The deciding official also stated that his decision was not based on the results of the IDC determination. *Id.* at 12.

¶6　　　The appellant filed an appeal with the Board arguing that the agency violated her right to due process, committed harmful error, and subjected her to unlawful discrimination based on her race (Filipino Chinese) and color (brown). IAF, Tab 1 at 7, Tab 25 at 10, Tab 29 at 2. After holding a hearing, the administrative judge issued an initial decision affirming the removal. IAF, Tab 36, Initial Decision (ID) at 1, 28. She found that the agency proved the charge as specified and the appellant failed to prove her claims alleging due process violations, harmful error, and discrimination. ID at 12-20. The administrative judge also found nexus and sustained the penalty of removal. ID at 20, 28.

¶7　　　The appellant has filed a petition for review wherein she argues, among other things, the following: (1) the agency failed to prove its charge; (2) the administrative judge made erroneous rulings regarding one of her proffered witnesses; (2) her removal was precipitated by discrimination on the basis of her race and color; (3) the agency violated her due process rights; and (4) the penalty of removal was unreasonable under the circumstances. Petition for Review (PFR) File, Tab 1 at 3-33. The agency has responded in opposition to her petition, and the appellant has replied thereto. PFR File, Tabs 3-4.

**ANALYSIS**

We discern no basis to disturb the administrative judge's conclusion that the agency proved its charge.

¶8　　　The appellant argues that the agency failed to prove its charge of failure to follow instructions. PFR File, Tab 1 at 5-13. To this end, she asserts the

following: (1) her actions were both appropriate and consistent with agency instructions and guidance; (2) the administrative judge failed to consider all of the evidence in the record; and (3) the administrative judge mischaracterized certain evidence, including the video recording of the incident. *Id.* We find that these assertions do not provide a basis to disturb the administrative judge's well-reasoned findings. ID at 6-12; *see Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same); *see also Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984) (explaining that an administrative judge's failure to discuss all of the evidence of record does not mean that the evidence was not considered), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). Accordingly, we discern no basis to disturb the administrative judge's conclusion that the agency proved its charge by preponderant evidence.

We discern no basis to disturb the administrative judge's evidentiary rulings.

¶9 The appellant contends that the administrative judge abused her discretion in "limiting and disregarding" the testimony of one of her witnesses, Dr. K. PFR File, Tab 1 at 24-28. Specifically, she argues that the administrative judge abused her discretion by (1) limiting the scope of Dr. K.'s testimony prior to the hearing, i.e., precluding her from testifying about the appellant's lack of intent to abuse a child, and (2) limiting the scope of Dr. K.'s testimony during the hearing. *Id.* at 24-28; PFR File, Tab 4 at 13. The appellant also seemingly argues that the administrative judge did not ascribe sufficient weight to Dr. K.'s testimony that the appellant's interactions with the child did not violate agency instructions. PFR File, Tab 1 at 25-28. We find these assertions unavailing.

¶10 An administrative judge has broad discretion to regulate the course of the hearing and to exclude evidence and witnesses that have not been shown to be

relevant, material, and nonrepetitious. *Thomas v. U.S. Postal Service*, 116 M.S.P.R. 453, ¶ 4 (2011); 5 C.F.R. § 1201.41(b)(8), (10). To obtain reversal of an initial decision on the basis of the exclusion of a witness, the appellant must show that a relevant witness or evidence, which could have affected the outcome, was disallowed. *See Thomas*, 116 M.S.P.R. 453, ¶ 4. Regarding the administrative judge's prehearing ruling, the record indicates that, following the parties' prehearing conference, the administrative judge issued an order wherein she limited the scope of Dr. K.'s testimony on the basis of relevance. IAF, Tab 29 at 4-5. Specifically, she indicated that Dr. K. could not testify regarding whether the appellant intended to abuse the child, reasoning that the agency was not required to prove intent to abuse.[4] *Id.* at 4. The administrative judge explained that, if either party objected to her order, they could file a written objection within 6 days. *Id.* at 8. The appellant did not object to the administrative judge's prehearing rulings concerning Dr. K.; accordingly, she is precluded from doing so on petition for review. *See Tarpley v. U.S. Postal Service*, 37 M.S.P.R. 579, 581 (1988) (stating that an appellant's failure to timely object to rulings on witnesses precludes the appellant from doing so on petition for review). Moreover, we find no basis to disturb the administrative judge's prehearing limitation of the scope of Dr. K.'s testimony on the basis of relevance. *See Thomas*, 116 M.S.P.R. 453, ¶ 4.

¶11 Regarding rulings made during the hearing, the appellant appears to be challenging the administrative judge's statement that she did "not need [Dr. K.] to testify with respect to whether she perceived the [a]ppellant's actions to be child abuse." PFR File, Tab 1 at 24, 26; Hearing Transcript (HT) at 162 (statement of the administrative judge). The appellant did not object to this ruling during the hearing. *See Whitehurst v. Tennessee Valley Authority*, 43 M.S.P.R. 486, 491 (1990) (explaining that an appellant is obliged to preserve for the Board's review

---

[4] She also precluded Dr. K. from testifying about whether the agency afforded the appellant due process and proper procedure. IAF, Tab 29 at 4-5.

objections to the administrative judge's conduct of the hearing and cannot wait until after the adjudication is complete to object for the first time to the administrative judge's hearing-related rulings). In any event, we find no error with this ruling. As set forth in the initial decision, the question of whether the agency proved its charge did not require any particular technical expertise; indeed, even assuming that Dr. K.'s expert opinion reflected a generally accepted approach to childcare, the agency was free to make its own instructions regarding the permissible behavior of its employees. ID at 10-11. The appellant's remaining evidentiary contention, i.e., that the administrative judge did not ascribe sufficient weight to Dr. K's testimony, does not provide a basis to disturb the initial decision because it constitutes mere disagreement with the administrative judge's explained factual findings and legal conclusions therefrom. *See Riggsbee v. Office of Personnel Management*, 111 M.S.P.R. 129, ¶ 11 (2009) (explaining that an appellant's mere disagreement with the administrative judge's explained factual findings and legal conclusions therefrom does not provide a basis to disturb the initial decision); *see also Crosby*, 74 M.S.P.R. at 106. Thus, a different outcome is not warranted.

We find no basis to disturb the administrative judge's conclusion that the appellant failed to prove her claim of discrimination.

¶12     The appellant reasserts her affirmative defense of disparate treatment discrimination based on her race (Filipino Chinese) and color (brown).[5] PFR File, Tab 1 at 30-33, Tab 4 at 14-15. We find her contentions in this regard unpersuasive; indeed, the administrative judge thoroughly considered the record as a whole and found that the appellant failed to show by preponderant evidence that discrimination was a motivating factor in her removal. ID at 17-19; *see*

---

[5] Although the appellant was not notified of the correct standards and burdens of proof applicable to this affirmative defense before the hearing, the initial decision set forth the applicable standard, thereby providing her with notice and an opportunity to meet her burden on review. *See Sabio v. Department of Veterans Affairs*, 124 M.S.P.R. 161, ¶ 6 n.2 (2017).

*Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶¶ 20-22 (explaining that an appellant may prove a claim of discrimination based on race or color under the motivating factor standard, i.e., by proving that prohibited discrimination played "any part" in the contested action).

¶13     We find that the appellant's conclusory arguments on review merely express disagreement with the administrative judge's weighing of the evidence. For example, the appellant states that she overheard her Caucasian supervisor say negative things about Filipinos and that another Filipino employee said that her supervisor mentioned the large number of Filipinos working there and stated that most are uneducated. PFR File, Tab 1 at 31. She also avers that all of her accusers were Caucasian, including her supervisor and the proposing and deciding officials. *Id.* The administrative judge observed the testimony of the agency officials and the appellant on these points, but she found insufficient evidence to infer a discriminatory motive. ID at 18-19. We find that the administrative judge's demeanor-based credibility determinations deserve deference from the Board.[6] *Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1372-73 (Fed. Cir. 2016) (finding that the Board must defer to an administrative judge's demeanor-based credibility determinations, "[e]ven if demeanor is not explicitly discussed"); *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).

¶14     The appellant also reasserts that other employees were treated more leniently when they engaged in similar misconduct. PFR File, Tab 1 at 30-33. She argues that the agency did not discipline one of her Caucasian coworkers who

---

[6] Further, the agency's investigation into the appellant's classroom conduct was initiated by a parent, not an agency employee, complaining that her babysitter had observed the appellant doing something objectionable to a different child. ID at 3. The appellant's supervisor and the Director responded to the parent complaint by watching the video recording of the appellant's classroom and saw nothing wrong with the conduct complained about; however, they observed the conduct underlying this removal action. *Id.*

worked at the same child care center for the same supervisor and purportedly engaged in similar conduct with the same child on the same day. *Id.* at 31-32. She also argues that the agency did not remove or discipline other non-Filipinos for engaging in similar or more serious conduct. *Id.*

¶15     In her initial decision, the administrative judge concluded that the alleged comparator employees were not similarly situated because they had different supervisors, engaged in conduct that was not substantially similar to the appellant's misconduct, or were not subject to the same standards as the appellant when the incidents occurred. ID at 19, 22-25. For example, the administrative judge found that the appellant's Caucasian coworker was not a lead teacher like the appellant and that she had not restricted the child's movements in a manner similar to that of the appellant.[7] ID at 19. We discern no basis to disturb any of these findings. *See Ly v. Department of the Treasury*, 118 M.S.P.R. 481, ¶ 10 (2012) (explaining that, for an employee to be deemed similarly situated for purposes of an affirmative defense of discrimination based on disparate treatment, all relevant aspects of the appellant's employment situation must be "nearly identical" to that of the comparator employee). Accordingly, we agree that the appellant failed to prove her claim of discrimination.[8]

---

[7] The administrative judge also considered the appellant's testimony that the agency did not discipline two Caucasian teachers for conduct that included threatening to cut a child's throat and lifting a child by his arm and sweeping him off his feet and placing him in a seated position. ID at 25. The administrative judge found that the appellant's testimony concerning these incidents, which the appellant allegedly witnessed, was not credible. *Id.* Although the appellant disputes this finding on review, PFR File, Tab 1 at 22, we discern no basis to disturb it, *see Haebe*, 288 F.3d at 1301.

[8] Because the appellant failed to show that the agency's action was motivated by discrimination, she necessarily failed to prove "but-for" causation. *See Pridgen*, 2022 MSPB 31, ¶ 22 (explaining that to obtain full relief, including status quo ante relief, an appellant must prove that discrimination was a but-for cause of the employment outcome).

<u>We agree with the administrative judge's conclusion that the appellant failed to prove a due process violation; however, we modify a portion of her analysis of this claim.</u>

¶16    The appellant contends that the administrative judge erred in finding that she failed to prove a due process violation. PFR File, Tab 1 at 13-15. Specifically, she asserts that the deciding official improperly considered section c of the Office of the Chief of Naval Operations Instruction (OPNAVINST) 1700.9e, Chapter 15.3, Child Guidance Techniques, because the notice of proposed removal referenced only sections b and e of the same.[9] *Id.*; IAF, Tab 8 at 37. OPNAVINST Child Guidance Techniques 15.3.c. prohibits corporal

---

[9] Additionally, the appellant contends that the agency violated her due process rights by failing to timely provide her with various information, i.e., (1) a DVD video recording of the incident underlying the charge, (2) documents pertaining to the IDC determination, and (3) documents pertaining to prior incidents involving the appellant being AWOL and sleeping in the classroom. PFR File, Tab 1 at 15-20. For the reasons set forth in the initial decision, we find the appellant's assertions regarding the DVD unavailing. ID at 13-14. Regarding the IDC documents, as discussed in the initial decision, the appellant's union representative testified that he had received IDC documents from the appellant before the submission of her reply to the notice of proposed removal. PFR File, Tab 1 at 19-20; ID at 15; HT at 116-17 (testimony of the appellant's union representative); *see Haebe*, 288 F.3d at 1301. Last, regarding the documents pertaining to the prior incidents involving the appellant, the record supports the administrative judge's conclusion that the deciding official did not consider these incidents in assessing the appropriate penalty; thus, these documents did not constitute material information. ID at 16-17; IAF, Tab 8 at 13; HT at 30 (testimony of the deciding official); *see Stone v. Federal Deposit Insurance Corporation*, [179 F.3d 1368](#), 1376-77 (Fed. Cir. 1999) (explaining that a deciding official violates an employee's due process rights when he relies upon new and material ex parte information as a basis for his decisions on the merits of a proposed charge or the penalty to be imposed).

The appellant also briefly argues that the deciding official partook in improper ex parte communications with a "Mr. Perez," asserting that she was unaware of the involvement of this individual until the hearing. PFR File, Tab 1 at 30, Tab 4 at 12-14. A review of the hearing transcript reveals that the name "Mr. Perez" came up only once during the hearing, i.e., when the deciding official stated during cross examination that a "Mr. Perez" had also reviewed the record and agreed that removal was appropriate. HT at 59 (testimony of the deciding official). The appellant's counsel did not inquire any further regarding the identity or involvement of this individual and the record provides no clarity regarding the same. Thus, we find the appellant's vague assertion regarding this purported ex parte communication unavailing.

punishment, which is defined as spanking, hitting, punching, slapping, pinching, shaking, or any other form of physical punishment.[10]  IAF, Tab 9 at 90-91.

¶17      Pursuant to the U.S. Court of Appeals for the Federal Circuit's decisions in *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279-80 (Fed. Cir. 2011), and *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376-77 (Fed. Cir. 1999), a deciding official violates an employee's due process rights when he relies upon new and material ex parte information as a basis for his decisions on the merits of a proposed charge or the penalty to be imposed.  In determining whether a due process violation has occurred, there is no basis for distinguishing between ex parte information provided to the deciding official and information personally known to him, if the information was considered in reaching the decision and not previously disclosed to the appellant.  *Lopes v. Department of the Navy*, 116 M.S.P.R. 470, ¶ 10 (2011).  *Ward*, *Stone*, and their progeny recognize, however, that not all ex parte communications rise to the level of due process violations; rather, only ex parte communications that introduce new and material information to the deciding official are constitutionally infirm.  *See, e.g.*, *Wilson v. Department of Homeland Security*, 120 M.S.P.R. 686, ¶ 8 (2014), *aff'd*, 595 F. App'x 995 (Fed. Cir. 2015).  In *Stone*, the Federal Circuit identified the following factors to be used to determine if ex parte information is new and material:  (1) whether the ex parte information introduced cumulative, as opposed to new, information; (2) whether the employee knew of the information and had an opportunity to respond; and (3) whether the communication was of the type likely to result in undue pressure on the deciding official to rule in a particular manner.  *Stone*, 179 F.3d at 1377.  Ultimately, the Board must determine "whether the ex parte communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances."  *Id*.  Due process, however, is not a

---

[10] Section 15.3.c also states, in pertinent part, that the use of corporal punishment is grounds for immediate dismissal.  IAF, Tab 9 at 90.

technical conception with a fixed content unrelated to time, place, and circumstances; rather, it is a flexible concept that calls for such procedural protections as the particular situation demands. *See, e.g.*, *Gajdos v. Department of the Army*, 121 M.S.P.R. 361, ¶ 18 (2014).

¶18 The administrative judge considered the appellant's argument that the deciding official had improperly considered section c even though she had not been charged with a violation of that specific provision. ID at 15. The administrative judge found the argument unavailing, reasoning that, although the deciding official may have personally believed that the appellant's conduct amounted to corporal punishment under section c, he "did not consider [whether the appellant had engaged in corporal punishment] in rendering his [removal] decision." *Id.* We disagree with this finding. Here, the hearing transcript indicates that the deciding official testified that he believed that the appellant had violated section c because, based on his review of the video, he thought that the appellant had shaken the child by "grabb[ing] him and pull[ing] him back into her." HT at 40 (testimony of the deciding official). Later in his testimony, the deciding official acknowledged that he had, in fact, taken his finding regarding corporal punishment into consideration in deciding to remove the appellant. HT at 47 (testimony of the deciding official). Accordingly, we vacate the administrative judge's finding that the deciding official did not consider section c in deciding to remove the appellant from her position; nevertheless, for the following reasons, we agree with her conclusion that the appellant failed to show that the agency violated her due process rights.

¶19 First, the appellant was generally aware of the policies that she was alleged to have violated; indeed, the agency's notice of proposed removal generally cited "OPNAVINST 1700.9E, Chapter 15" as a reference. IAF, Tab 8 at 37. Additionally, the proposing official's *Douglas* factors worksheet, which the appellant referenced in her written reply, alleged that the appellant had "[v]iolated . . . OPNAV 1700.9e; Chapter 15 Section 3 — Child Abuse and

Neglect." *Id.* at 31; IAF, Tab 9 at 7. In addition to referencing the OPNAVINST, the notice of proposed removal also specifically referenced the agency's Touch Policy. IAF, Tab 8 at 37. The proposing official's *Douglas* factors worksheet also referenced this policy.[11] IAF, Tab 9 at 9. This policy, like section c of chapter 15 in the OPNAVINST, prohibits corporal punishment. *Id.* at 95. Specifically, it states as follows: "A child will not be punished by . . . shaking or other corporal punishment." *Id.* It also sets forth "the definition of what is considered appropriate touch and inappropriate touch," with examples provided. *Id.* The definition of inappropriate touching includes "corporal punishment." *Id.*

¶20 Second, the notice of proposed removal identified the specific conduct that the agency determined to be in violation of the aforementioned policies; indeed, it stated as follows: "[Y]ou were witnessed on video . . . physically restraining a child for approximately 10 minutes." IAF, Tab 8 at 37. It further explained that the appellant was seen "pulling [the child] by the arms and legs" and "wrapping [her] own arms and legs around him on [her] lap to restrain him." *Id.* at 37-38.

¶21 Third, the appellant provided a specific response to the agency's allegations concerning her conduct; indeed, in her written reply, she described her conduct as follows: "He then wiggled off, crawling away from me. I leaned forward, pulled him back towards me, and held him close to my body – I gave him a big hug." *Id.* at 29. Notes from the appellant's oral reply reflect that she stated, "I was trying to hold him, but he was resisting. . . . He'd get up; I'd hold him again. . . . He kept wiggling. . . . I was not punishing the child at all." *Id.* at 33-34. She also indicated her understanding that she was "alleged to have temporarily breached the 'touch policy.'" *Id.* at 30. She specifically addressed this policy and seemingly asserted that her actions constituted appropriate touch pursuant to the

---

[11] Specifically, the worksheet stated as follows: "Each employee signs a 'Touch Policy' which specifically states both appropriate and inappropriate actions with children." IAF, Tab 9 at 9.

same.[12]  *Id.* at 30-32; *see* IAF, Tab 9 at 95 (indicating that appropriate touch includes hugs and lap sitting).  She acknowledged in her written reply that "[i]nappropriate touch includes such behavior as . . . corporal punishment."  IAF, Tab 8 at 32.  She also argued in her oral reply that, under the Touch Policy, it is appropriate to "hold children firmly," and she suggested that her conduct did not constitute inappropriate touch.  *Id.* at 34; *see also* HT at 266 (testimony of the appellant acknowledging that she stated in her reply that she did not violate the Touch Policy).

¶22        In light of the foregoing, to the extent that the agency's notice of proposed removal failed to explicitly cite to section c, we find that the oversight was not so substantial and so likely to cause prejudice as to deprive the appellant of due process.  *See Stone*, 179 F.3d at 1376-77 (explaining that "not every ex parte communication is a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee").  Indeed, as discussed above, the record showed that the appellant was notified of the conduct that the agency found objectionable and of the policies that she was alleged to have violated.  *See Harding v. U.S. Naval Academy*, 567 F. App'x 920, 924 (Fed. Cir. 2014) (finding that the agency did not violate the appellant's due process rights when the proposal notice charged her with being under the influence of illegal drugs but the deciding official found that she had engaged in illegal drug use because the appellant "could not reasonably have [been] misled" about the reason for the proposal as the narrative portion of the proposal notice referenced illegal drug use);[13] *see also Wilson*, 120 M.S.P.R. 686, ¶¶ 10-12 (finding no due process violation when the appellant, in responding to the proposed action, made a

---

[12] However, as discussed above, the appellant also seemingly acknowledged a "minor" violation of the policy.  IAF, Tab 8 at 31.

[13] The Board has found that it may rely on unpublished decisions of the Federal Circuit when, as here, it finds the court's reasoning persuasive.  *E.g.*, *Vores v. Department of the Army*, 109 M.S.P.R. 191, ¶ 21 (2008), *aff'd*, 324 F. App'x 883 (Fed. Cir. 2009).

"specific and significant" response to an aggravating factor even though it was not cited in the proposal notice). Thus, although we agree with the administrative judge's conclusion that the agency did not violate the appellant's due process rights, we modify the basis for this finding.

<u>We agree that the penalty of removal was reasonable under the circumstances.</u>

¶23    The appellant raises a series of arguments regarding the penalty of removal. PFR File, Tab 1 at 20-24. To this end, she avers the following: (1) the agency failed to engage in progressive discipline; (2) the agency failed to consider her rehabilitative potential; and (3) she was charged with failure to follow instructions, not child abuse, and numerous other employees who have been similarly charged have not been removed from their positions. *Id.*

¶24    When, as here, the agency's charge is sustained, the Board will review an agency imposed penalty only to determine if the agency considered all of the relevant factors and exercised discretion within tolerable limits of reasonableness. *Ellis v. Department of Defense*, 114 M.S.P.R. 407, ¶ 11 (2010); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). In making this determination, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised. *Ellis*, 114 M.S.P.R. 407, ¶ 11; *Douglas*, 5 M.S.P.R. at 306. The Board will modify an agency-imposed penalty only when it finds that the agency failed to weigh the relevant factors or the penalty clearly exceeds the bounds of reasonableness. *Ellis*, 114 M.S.P.R. 407, ¶ 11.

¶25    Here, the administrative judge applied the proper legal standard and concluded that the agency's selected penalty of removal was not unwarranted under the circumstances and was within the tolerable bounds of reasonableness. ID at 20-28; *see Ellis*, 114 M.S.P.R. 407, ¶ 11. In so doing, she reasoned that the deciding official had considered the relevant *Douglas* factors. ID at 20-21; *see*

*Haebe*, 288 F.3d at 1301; *see also Douglas*, 5 M.S.P.R. at 305-06. She also reasoned that the appellant's conduct was "serious" in nature and "made more serious by the fact that [she] is a lead teacher with responsibility for overseeing and mentoring other classroom teachers." ID at 21; IAF, Tab 10 at 10. She thoroughly considered the appellant's claims regarding progressive discipline, rehabilitative potential, and disparate penalties,[14] but she found each claim unavailing. ID at 21-28. For example, regarding rehabilitative potential, the administrative judge reasoned that the appellant had testified at the hearing that she believed that her interaction with the child was proper and that, if faced with the same circumstances again, she would engage in the same conduct. ID at 27-28; HT at 283 (testimony of the appellant). The administrative judge also recounted the deciding official's testimony that, given the nature of the appellant's offense, he had concerns about placing her back in a classroom setting. ID at 26-27. Accordingly, we discern no basis to disturb the administrative judge's conclusion that the penalty of removal was reasonable under the circumstances. *See Green v. Department of the Navy*, 61 M.S.P.R. 626, 636 (explaining that the Board has found that failure to follow instructions may be sufficient cause for removal), *aff'd*, 36 F.3d 1116 (Fed. Cir. 1994) (Table).

---

[14] After the initial decision in this case was issued, the Board overruled some of its prior precedent governing the analysis of claims of disparate penalties when weighing the reasonableness of a penalty and clarified that it should not weigh the relative seriousness of various offenses to determine if the agency treated employees who committed different acts of misconduct differently; rather, the relevant inquiry is whether the agency knowingly and unjustifiably treated employees who engaged in the same or similar offenses differently. *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶¶ 14, 17. Applying this standard here, we conclude that the appellant's arguments both before the administrative judge and on review do not show that the agency knowingly and unjustifiably treated any employees who engaged in the same or similar offenses differently.

We have considered the appellant's remaining arguments; however, we find them unavailing.

¶26      We have considered the appellant's remaining assertions; however, we find that none of these assertions provide a basis to disturb the initial decision. For example, the appellant reasserts that the agency committed harmful procedural error. PFR File, Tab 1 at 28-30. We find, however, that the appellant's arguments do not warrant disturbing the administrative judge's conclusions concerning this claim. ID at 16-17.

¶27      Accordingly, we affirm the initial decision as modified.

## NOTICE OF APPEAL RIGHTS[15]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions

---

[15] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain

judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[16]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[16] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:
/s/ for
Jennifer Everling
Acting Clerk of the Board

Washington, D.C.